UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JULIE GULCH,

       Plaintiff,                                    Hon. Ellen S. Carmody

v.

                                                Case No. 1:11-cv-21

COMMISSIONER OF
SOCIAL SECURITY,

       Defendant.
_____/

## **OPINION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under Titles II and XVI of the Social Security Act. On May 13, 2011, the parties agreed to proceed in this Court for all further proceedings, including an order of final judgment. (Dkt. #10).

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Commissioner's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**.

**STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial

interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 46 years old on her alleged onset date and 50 years old at the time of the ALJ's decision. (Tr. 21, 136). She possesses an eleventh grade education and worked previously as a cashier, greeter, and cab driver. (Tr. 177-81, 248, 252).

Plaintiff applied for benefits on February 20, 2008, alleging that she had been disabled since April 7, 2006, due to COPD, bi-polar disorder, ADD, and depression. (Tr. 136-41, 247). Plaintiff's application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 81-135). On March 16, 2010, Plaintiff appeared before ALJ Danial Dadabo, with testimony being offered by Plaintiff and vocational expert, David Holwerda. (Tr. 28-58). In a written decision dated April 2, 2010, the ALJ determined that Plaintiff was not disabled. (Tr. 11-21). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-5). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## RELEVANT MEDICAL HISTORY

X-rays of Plaintiff's chest, taken on October 29, 2007, revealed "no active pulmonary disease." (Tr. 267). On October 31, 2007, Plaintiff participated in an echocardiogram examination

3

the results of which were unremarkable and revealed no evidence of ischemia. (Tr. 278-81).

On December 10, 2007, Plaintiff was examined by psychiatrist Dr. Dhanu Mahesh. (Tr. 291-93). Plaintiff reported that she was "diagnosed as bipolar years ago but never took any bipolar medications." (Tr. 291). Plaintiff also reported that she experiences "severe COPD," but "continues to smoke one-half [of cigarettes] a day." (Tr. 291). Plaintiff reported that she "sleeps all day long" and "does not get out of her bedroom," but later stated that she "will clean the house and take care of everything, doing crafts, and running around." (Tr. 291). Plaintiff reported that she "used to have a very destructive lifestyle...hanging around with a bad crowd." (Tr. 291). Plaintiff reported that she "was drinking every day" and "did cocaine, crank, pot, and alcohol." (Tr. 291). Plaintiff reported that she "stopped doing all of that about eight years ago." (Tr. 291). Plaintiff's affect was "constricted" and her mood was "anxious, depressed, and guarded." (Tr. 292). Plaintiff was diagnosed with bipolar affective disorder, mixed and her GAF score was rated as 50.[1] (Tr. 292). Plaintiff was prescribed "mood stabiliz[ing]" medications. (Tr. 293).

On January 29, 2008, Dr. Mahesh reported that Plaintiff "is taking her medications" and that her "mood is stable" and she "is sleeping better." (Tr. 290). Plaintiff reported that she was "doing okay," but was experiencing difficulty staying focused. (Tr. 290). Plaintiff's medication regimen was modified. (Tr. 290). On February 26, 2008, Plaintiff was examined by Dr. Mahesh. (Tr. 428). Plaintiff reported that "she is doing somewhat better" and "her moods are getting level." (Tr. 428). Plaintiff also reported that "she is sleeping fairly well." (Tr. 428).

---

[1] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994) (hereinafter DSM-IV). A GAF score of 50 indicates that the individual is experiencing "serious symptoms or any serious impairment in social, occupational, or school functioning." DSM-IV at 34.

On April 1, 2008, Plaintiff participated in a consultive examination conducted by Robert Baird, Ph.D. and Ronald Vanderbeck, Ph.D. (Tr. 340-44). Plaintiff reported that she "can't" work because she "can't even get out of bed some days." (Tr. 340). Plaintiff reported however that "she enjoys crafts, visiting with her children, and going swimming" and "also enjoys riding motorcycles." (Tr. 342). Plaintiff also reported that she shops, prepares meals, and performs household chores. (Tr. 342). The results of a mental status examination were unremarkable and the examiners also noted that Plaintiff's "intelligence appeared average." (Tr. 342-43). Plaintiff was diagnosed with bipolar disorder, ADHD, and delusional disorder. (Tr. 344). The examiners "encouraged [Plaintiff] to continue participation in mental health treatment and to continue consultation with [her] prescribing physician to evaluate efficacy of medication." (Tr. 344).

On April 16, 2008, Dr. Jung Kim completed a Psychiatric Review Technique form regarding Plaintiff's mental limitations. (Tr. 505-18). Determining that Plaintiff suffered from ADHD and bi-polar disorder, the doctor concluded that Plaintiff satisfied the Part A criteria for Section 12.02 (Organic Mental Disorders) and Section 12.04 (Affective Disorders) of the Listing of Impairments. (Tr. 506-14 ). The doctor determined, however, that Plaintiff failed to satisfy any of the Part B criteria for these particular Listings. (Tr. 515). Specifically, the doctor concluded that Plaintiff experienced mild restrictions in the activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and never experienced episodes of deterioration or decompensation in work or work-like settings. (Tr. 515).

Dr. Kim also completed a Mental Residual Functional Capacity Assessment form regarding Plaintiff's limitations in 20 separate categories encompassing (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaptation. (Tr.

348-51). Plaintiff's abilities were characterized as "moderately limited" in eight categories. (Tr. 348-49). With respect to the remaining 12 categories, however, the doctor reported that Plaintiff was "not significantly limited." (Tr. 348-49).

Following a June 17, 2008 examination, Dr. Mahesh reported that Plaintiff "is sleeping well" and that "her moods have been stable." (Tr. 426). Following a October 16, 2008 examination, Dr. Mahesh reported that Plaintiff's "mood has been fairly stable" and that "she is less depressed" and "is sleeping better." (Tr. 425). On December 15, 2008, Plaintiff reported to Dr. Mahesh that she was continuing to take her medication and that she "is doing better" and "is sleeping fairly well." (Tr. 424).

On March 26, 2009, Plaintiff was examined by psychologist Jennifer Sachek, Ph.D. (Tr. 371-74). Dr. Sachek reported that she met Plaintiff in the waiting room and "after walking to my office, which is a good distance from the waiting room, [Plaintiff] was breathing very heavily and in a dramatic way." (Tr. 371). The doctor further observed, however, that Plaintiff "did not have the same breathing difficulties after the interview when she walked back toward the waiting room to complete the personality questionnaire." (Tr. 371). The results of a mental status examination were unremarkable and the doctor further observed that Plaintiff's "intelligence, judgment and insight appear to be adequate." (Tr. 373). Plaintiff also participated in a personality questionnaire on which Plaintiff "endorsed an extremely high number of infrequently reported symptoms, even by individuals with genuine, severe psychopathology with credible symptoms." (Tr. 373). Dr. Sachek observed that this "may be due in part to some carelessness or inconsistent responding on [Plaintiff's] part, as well as an effort to over-report symptoms." (Tr. 373). The doctor concluded that Plaintiff's performance on this evaluation "suggest[s] a desire to emphasize and

perhaps over-emphasize her difficulties." (Tr. 374). The doctor further observed that "it is difficult to determine whether [Plaintiff's] presentation is more consistent with someone who is vague and exaggerating symptoms due to some secondary gain, versus someone who is mistrustful of others and does not want to admit her own faults." (Tr. 374). Plaintiff was diagnosed with post-traumatic stress disorder, mood disorder, and ADHD and her GAF score was rated as 50. (Tr. 373).

On January 7, 2010, Plaintiff was examined by Dr. Timothy Gates "for evaluation of COPD." (Tr. 386-88). Plaintiff reported that she was experiencing "worsening shortness of breath secondary to her COPD" and that she is unable to walk more than 100 feet before she experiences shortness of breath. (Tr. 386). On examination, the doctor observed "a slight expiratory wheeze with auscultation of [Plaintiff's] lungs." (Tr. 387). The doctor further observed, however, that "there was also an inconsistent audible wheeze that appears to be present more when [Plaintiff] is being watched rather than when she is being distracted." (Tr. 387). Otherwise the results of a physical examination were "unremarkable." (Tr. 387). Dr. Gates concluded that Plaintiff can frequently lift and carry up to 20 pounds and can occasionally lift and carry up to 50 pounds. (Tr. 389). The doctor also reported that during an eight-hour work day Plaintiff can sit for four hours, stand for three hours, and walk for one hour. (Tr. 390).

On January 15, 2010, Plaintiff participated in a consultive examination conducted by Robert Griffith, Ph.D. (Tr. 396-400). Plaintiff reported that she was unable to work because she "can't hardly breathe" and because she has bipolar disorder. (Tr. 396). Plaintiff acknowledged that she was prescribed medication to treat her bipolar disorder but that she does not take her medication as prescribed. (Tr. 396). Plaintiff exhibited "somewhat restricted" affect, but otherwise the results of a mental status examination were unremarkable. (Tr. 398-99). Plaintiff was diagnosed with

cognitive disorder, mood disorder, generalized anxiety disorder, history of alcohol abuse, history of substance abuse, and personality disorder. (Tr. 400). Her GAF score was rated at 54.[2] (Tr. 400).

The doctor reported that Plaintiff experienced moderate difficulties in the following areas of functioning: (1) interact appropriately with the public; (2) interact appropriately with supervisors; (3) interact appropriately with coworkers; and (4) respond appropriately to usual work situations and to changes in a routine work setting. (Tr. 402). The doctor also reported that Plaintiff experienced no difficulties in the following areas of functioning: (1) understand and remember simple instructions; (2) carry out simple instructions; and (3) the ability to make judgments on simple work-related decisions. (Tr. 401).

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[3] If the Commissioner can make a

---

[2] A GAF score of 54 indicates "moderate symptoms or moderate difficulty in social, occupational, or school functioning." DSM-IV at 34.

[3] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffered from: (1) bi-polar disorder with mixed depressive and anxiety features; and (2) asthma, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 14-15). With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform light work[4] subject to the following limitations: (1) she can

---

[4] Light work involves lifting "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567. Furthermore, work is considered "light" when it involves "a good deal of walking or standing," defined as "approximately 6 hours of an 8-hour workday." 20 C.F.R. § 404.1567; Titles II and XVI: Determining Capability to do Other Work - the Medical-Vocational Rules of Appendix 2, SSR 83-10, 1983 WL 31251 at *6 (S.S.A., 1983); *Van Winkle v. Commissioner of Social Security*, 29 Fed. Appx. 353, 357 (6th Cir., Feb. 6, 2002).

stand/walk for no more than three hours at one time; (2) she must avoid excessive exposure to dust, fumes, odors, and temperature extremes; and (3) she is limited to routine unskilled work that does not vary from day to day and which does not involve team coordination or public contact. (Tr. 15).

The ALJ concluded that Plaintiff was unable to perform any of her past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert David Holwerda.

The vocational expert testified that there existed approximately 19,800 jobs in the state of Michigan which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 51-54). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

      a.      The ALJ's Decision that Plaintiff does not Satisfy Section 12.05 of the Listing of Impairments is Supported by Substantial Evidence

Plaintiff first asserts that she is entitled to disability benefits because she satisfies the requirements of section 12.05 (Mental Retardation) of the Listing of Impairments. Plaintiff bears the burden to demonstrate that she satisfies the requirements of a listed impairment. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540 (6th Cir. 2007) (the claimant bears the burden of proof through step four of the sequential disability determination procedure); *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 527 (6th Cir., Aug. 26, 2003) (claimant bears the burden of establishing that he satisfies a listed impairment). Section 12.05 of the Listing provides, in relevant part, the following:

> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> A.    Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;
>
> OR
>
> B.    A valid verbal, performance, or full scale IQ of 59 or less;
>
> OR
>
> C.    A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment

11

>    imposing additional and significant work-related limitation of function;
>
> OR
>
> D.  A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
>
>    1.  Marked restriction of activities of daily living; or
>
>    2.  Marked difficulties in maintaining social functioning; or
>
>    3.  Marked difficulties in maintaining concentration, persistence or pace; or
>
>    4.  Repeated episodes of decompensation, each of extended duration.

20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.05 (2008).

Plaintiff asserts that she satisfies sub sections 12.05(C) and 12.05(D). As noted above, Testing conducted in February 2010, revealed that Plaintiff possessed a verbal IQ of 80, a performance IQ of 68, and a full-scale IQ of 72. (Tr. 436). Moreover, Plaintiff suffers from an emotional impairment which imposes additional and significant work-related limitations, as the ALJ recognized.

Given Plaintiff's performance IQ score, she satisfies the criteria articulated in subsection (C). As discussed below, however, Plaintiff does not satisfy the additional requirements to be found disabled under this particular listing. As for subsection (D), while Plaintiff's performance IQ results are within the requisite range, the evidence of record does not support the argument that she satisfies the remaining criteria. Moreover, even if Plaintiff did satisfy the remaining criteria articulated in subsection (D), as discussed immediately below the result is the

same because she cannot satisfy the additional requirements to be found disabled under this listing.

In addition to satisfying the aforementioned requirements articulated in subsections (C) or (D), Plaintiff must also satisfy the requirements articulated in the introductory paragraph of Section 12.05. 20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.00(A) ("[i]f your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets" section 12.05). Specifically, Plaintiff must establish that she satisfies the "diagnostic description" of mental retardation articulated in the introductory paragraph of Section 12.05. *See, e.g., West v. Comm'r of Soc. Sec.*, 240 Fed. Appx. 692, 697-98 (6th Cir., July 5, 2007) (to satisfy Section 12.05, the claimant must demonstrate that he experienced deficiencies in adaptive functioning prior to attaining the age of 22); *Cooper v. Comm'r of Soc. Sec.*, 217 Fed. Appx. 450, 451 (6th Cir., Feb. 15, 2007) (same); *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) (same).

The record contains no evidence that Plaintiff experienced deficiencies in adaptive behavior or suffered from mental retardation prior to the age of 22 or at anytime thereafter. Neither Plaintiff's care providers nor any of the medical professionals who examined the record in this case concluded that Plaintiff was mentally retarded, satisfied the "diagnostic description" of mental retardation articulated in the introductory paragraph of Section 12.05, or experienced deficiencies in adaptive functioning prior to age 22. On the other hand, Dr. King and Dr. Kinzie, the examiners who administered to Plaintiff her IQ tests, determined that Plaintiff suffered from borderline intellectual functioning, a finding supported by substantial evidence of record. As the Sixth Circuit has observed, a diagnosis of borderline intellectual functioning is inconsistent with a diagnosis of mental retardation and, therefore, precludes a finding that the requirements of Section 12.05 have

been met. *See Cooper*, 217 Fed. Appx. at 451.

Furthermore, the fact that Plaintiff maintained employment throughout much of her adult life is inconsistent with the conclusion that she is mentally retarded. Such indicates that Plaintiff did not experience deficiencies in adaptive behavior prior to age 22, or thereafter for that matter. *See Burrell v. Comm'r. of Soc. Sec.*, 2000 WL 1827799 at *2 (6th Cir., Dec. 8, 2000) (no evidence of a deficit in adaptive functioning where claimant "remained fairly active, maintains an interest in his household, and enjoys apparent satisfactory relationships with family members"); *Adkins v. Astrue*, 226 Fed. Appx. 600, 605 (7th Cir., Apr. 10, 2007) (claimant possessing an 8th grade education and "gainfully employed until the age of forty-one" not disabled under section 12.05); *Wright v. Astrue*, 2011 WL 1486208 at *7 (N.D. Ind., Mar. 31, 2011) (when assessing whether claimant satisfies section 12.05, the court must consider more than IQ scores alone and must also consider claimant's work history and other activities); *Freeman v. Apfel*, 208 F.3d 687, 692 (8th Cir. 2000) (claimant who possessed a 10th grade education, and who worked as an oil-changer, not disabled under section 12.05); *Williams v. Sullivan*, 970 F.2d 1178, 1185 (3rd Cir. 1992) (claim of mental retardation contradicted by the fact that claimant was able to "maintain a job for most of his adult life"); 20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.00(D) (recognizing that when evaluating mental disorders, a claimant's work history is "particularly useful" in assessing the extent of impairment). Finally, Plaintiff's reported activities are inconsistent with her claim of mental retardation. (Tr. 130-39, 197-204). Accordingly, the Court concludes that substantial evidence supports the ALJ's determination that Plaintiff does not satisfy this Section 12.05 of the Listing of Impairments.

b. The ALJ Properly Evaluated Plaintiff's Impairments

At step two of the sequential disability analysis articulated above, the ALJ must determine whether the claimant suffers from a severe impairment. As previously noted, the ALJ determined that Plaintiff suffered from the following severe impairments: (1) bi-polar disorder with mixed depressive and anxiety features; and (2) asthma. Plaintiff asserts that the ALJ's decision must be reversed because the ALJ failed to find that she also suffered from: (1) cognitive disorder and borderline intellectual functioning; (2) ADHD/ADD; (3) depression; (4) post-traumatic stress disorder; (5) mood disorder; (6) anxiety/anxiety disorder; (7) panic disorder with agoraphobia; (8) delusional disorder; (9) personality disorder with paranoid and possible schizotypal features; (10) lumbar osteopenia; (11) hepatitis; and (12) COPD.

The Sixth Circuit has held that where the ALJ finds the presence of a severe impairment at step two and proceeds to continue through the remaining steps of the analysis, the alleged failure to identify as severe some other impairment constitutes harmless error so long as the ALJ considered the entire medical record in rendering his decision. *See Maziarz v. Sec'y of Health and Human Services*, 837 F.2d 240, 244 (6th Cir. 1987); *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir., Feb. 22, 2008) (citing *Maziarz*, 837 F.2d at 244); *Fisk v. Astrue*, 253 Fed. Appx. 580, 583-84 (6th Cir., Nov. 9, 2007) (same).

Here, the ALJ determined that Plaintiff suffered from severe impairments at step two of the sequential analysis. In this respect, the Court notes that the ALJ's finding that Plaintiff suffers from asthma and bi-polar disorder with mixed depressive and anxiety features appears to encompass most of the allegedly severe impairments which the ALJ failed to identify. To the extent that such are not encompassed by the ALJ's finding in this regard, the record does not support the argument

that such are severe impairments. *See* 20 C.F.R. § 404.1520(c) (a "severe" impairment is defined as an impairment that "significantly limits your physical or mental ability to do basic work activities"). After identifying the severe impairments from which Plaintiff suffered, at step two of the analysis, the ALJ continued with the remaining steps of the sequential analysis, discussing in detail the entire record. (Tr. 11-21). Thus, even if the Court assumes that the ALJ erred in failing to find that Plaintiff suffered from additional severe impairments, such does not warrant reversal of the ALJ's decision.

### c.     The ALJ Properly Evaluated the Medical Evidence

Plaintiff asserts that the ALJ failed to accord controlling weight to opinions expressed by two of her treating physicians. The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, "give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the] case record.'" *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial

16

medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Wilson*, 378 F.3d at 544. In articulating such reasons, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *See* 20 C.F.R. §§ 404.1527, 416.927; *see also*, *Wilson*, 378 F.3d at 544. The ALJ is not required, however, to explicitly discuss each of these factors. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007). Instead, the record must reflect that the ALJ considered those factors relevant to her assessment. *See Oldham*, 509 F.3d at 1258; *Undheim*, 214 Fed. Appx. at 450.

1. Dr. Cristina Ignacio

On February 25, 2010, Dr. Ignacio completed a report regarding Plaintiff's physical abilities. (Tr. 503-04). The doctor reported that Plaintiff could sit and/or stand "continuously up to two hrs. or occasionally up to six hrs.," but could "never" walk. (Tr. 503). The doctor reported that Plaintiff could lift up to 25 pounds "continuously up to eight hrs. with breaks" and could lift over 50 pounds "continuously up to two hrs. or occasionally up to six hrs." (Tr. 503). Dr. Ignacio also reported that Plaintiff experienced "serious limitations as to pace and concentration" and "would

need a sit-stand option." (Tr. 503).

The ALJ afforded little weight to Dr. Ignacio's opinion. (Tr. 19). The ALJ concluded that to the extent Dr. Ignacio offered opinions as to Plaintiff's mental status, such were worthy of little weight given the doctor's lack of training and expertise regarding such. (Tr. 19). With respect to the physical limitations articulated by Dr. Ignacio, the ALJ found such to be "not well-supported" and "inconsistent with other substantial evidence." (Tr. 19). This conclusion is supported by substantial evidence as detailed above. There is no support in the record for the conclusion that Plaintiff can never walk, requires a sit/stand option, or experiences "serious" limitations as to pace and concentration. The Court, therefore, discerns no error in the ALJ's decision to afford less than controlling weight to this particular opinion.

2. Dr. Patricia Millan

On March 14, 2008, Dr. Millan reported that Plaintiff could not lift more than 10 pounds and was unable to stand/walk for any length of time. (Tr. 330-31). The ALJ afforded "minimal" weight to Dr. Millan's opinion noting that the doctor acknowledged performing no x-rays or laboratory analysis. (Tr. 19, 330). Moreover, as discussed above, the opinions expressed by Dr. Millan are simply not supported by the evidence of record. Accordingly, the Court finds that substantial evidence supports the ALJ's decision to afford less than controlling weight to Dr. Millan's opinion.

## **CONCLUSION**

For the reasons articulated herein, the Court concludes that the ALJ's decision is

supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**. A judgment consistent with this opinion will enter.


Date:  February 28, 2012                    /s/ Ellen S. Carmody
                                                               ELLEN S. CARMODY
                                                               United States Magistrate Judge